**John MEYERS, Plaintiff,**

v.

**CITY OF CINCINNATI, et al.,
Defendants.**

**Civ. No. C-1-88-466.**

United States District Court,
S.D. Ohio, W.D.

Jan. 4, 1990.

---

William Wyler, Cincinnati, Ohio, for plaintiff.

James McCarthy, Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on cross-motions for summary judgment (Doc. Nos. 17 and 19). In accordance with Fed.R. Civ.P. 52, the Court does hereby set forth its findings of fact, opinion and conclusions of law.

## FINDINGS OF FACT

(1) Plaintiff John Meyers is a non-minority individual who was employed by the City of Cincinnati Fire Division for a thirty-year period ending on March 21, 1988. At the time of the termination of his employment, plaintiff held the position of Assistant Chief of the Cincinnati Fire Division in charge of the Personnel and Training Bureau. In that capacity, he was responsible for personnel matters and fire fighter recruitment.

(2) The City of Cincinnati (the City) is a municipal corporation organized and existing under the constitution and laws of the State of Ohio.

(3) David Rager was at all material times employed by the City as Assistant Safe-

ty Director. He is sued in his individual and official capacities.

(4) Scott Johnson was at all material times the City Manager and Chief Executive Officer of the City of Cincinnati and the appointing authority for the City. He is sued in his individual and official capacities.

(5) On December 5, 1987, the City commenced a sign-up for new fire fighter recruit candidates at Cincinnati City Hall.

(6) Following the sign-up, plaintiff received complaints from fire fighter recruit candidates and others that some individuals had handed out literature during the sign-up to minority and female recruit candidates only. Plaintiff reported the complaints to Norman Wells, Chief of the Fire Division. Chief Wells ordered plaintiff to investigate the complaints.

(7) The literature that was the subject of the complaints was a business card for an organization known as "Prep, Inc." (Prep). Prep is an organization which provides assistance to minorities to enable them to compete successfully for jobs.

(8) On December 7, 1987, plaintiff telephoned Prep and spoke to an individual by the name of Daisy Foster. Plaintiff subsequently telephoned Prep again and spoke to an individual by the name of Lucy Green. Plaintiff reported the information he had received as a result of his contacts to Assistant Fire Chief Charles Collini, who was acting as Fire Chief due to an illness of Fire Chief Wells.

(9) Subsequently, Daisy Foster and Lucy Green complained to Rager and some members of Cincinnati City Council regarding plaintiff's conduct during his investigation of Prep. Among the allegations against plaintiff was that he had made comments to Prep representatives to the effect that the organization was assisting unqualified individuals to obtain jobs.

(10) Upon receiving these complaints, Rager ordered Chief Wells to investigate plaintiff's actions during the Prep in-

vestigation. Chief Wells concluded from his investigation that plaintiff's actions did not warrant discipline. Chief Wells recommended that no formal discipline be administered.

(11) Defendant Rager rejected Chief Wells' recommendation and ordered that disciplinary charges be brought against plaintiff, which charges were prepared by Chief Wells. Deputy City Manager Michael Bierman concurred in Rager's decision to file charges.

(12) Chief Wells informed plaintiff that he could resign or take a demotion in lieu of having charges filed against him, but plaintiff declined both options.

(13) Formal charges were presented to plaintiff in January, 1988. A hearing on the charges was conducted on February 12, 1988. Defendant Rager presided at the hearing. Subsequent to the hearing, Rager recommended to Robert Burnett, Director of the Personnel Department, that plaintiff be dismissed. Burnett recommended that the proposed discipline be modified. Rager subsequently recommended to Johnson that plaintiff be demoted to District Fire Chief for a six-month period with mandatory referral to sensitivity training, to be followed by an evaluation of plaintiff's progress and performance to determine if a repromotion was merited. Bierman approved Rager's recommendation and referred it to Johnson, who likewise approved the recommendation.

(14) On March 18, 1988, Chief Wells called plaintiff into his office and gave him a Form 32, Notice of Disciplinary Action, Layoff or Displacement, which notified plaintiff of the disciplinary action to be taken against him. Chief Wells informed plaintiff that his option to resign remained open. Plaintiff was given until March 21, 1988 to decide whether to take a demotion or resign. On March 21, plaintiff resigned from the Fire Division.

(15) Plaintiff timely filed an appeal with the Cincinnati Civil Service Commission. After a hearing on the issue of

whether plaintiff had a right to appeal, the Commission declined to grant plaintiff a hearing on the merits of his appeal on the ground that he had voluntarily resigned from his job and therefore had no standing to bring an appeal.

(16) Following his resignation, plaintiff received his terminal leave allotment for accumulated sick leave and vacation. He receives a pension from the Police and Firemen Pension Fund of Ohio at the rate for an assistant fire chief.

## OPINION

The summary judgment procedure under Federal Rule of Civil Procedure 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting, First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14 (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. There is no genuine issue for trial unless there is sufficient evidence favoring

the nonmoving party for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (*citing Cities Service,* 391 U.S. at 288–289, 88 S.Ct. at 1592–1593). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service,* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## CONSTRUCTIVE DISCHARGE

■ Plaintiff claims that he was constructively discharged from his position as Assistant Fire Chief. A constructive discharge occurs if "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Yates v. Avco Corp.,* 819 F.2d 630, 636–37 (6th Cir.1987) (*quoting Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982). The Court must undertake a two-part inquiry into the objective feelings of an employee, and the intent of the employer. *Id.* at 636. Because an employee's perception of his situation is judged objectively, the employee may not be unreasonably sensitive to his working environment. *Kreis v. Charles O. Townley M.D. & Assoc., P.C.,* 833 F.2d 74, 82 (6th Cir.1987).

■ The feelings of a reasonable employee are not sufficient to establish a constructive discharge without at least some foreseeability on the employer's part. *Yates,* 819 F.2d at 637. In this context, an employer is held to intend the foreseeable consequences of his conduct. *Held,* 684 F.2d at 432.

■ Plaintiff contends that a reasonable individual in his situation would have felt compelled to resign. Defendants question whether the Court has jurisdiction to consider constructive discharge as a violation of § 1983 since the courts in this circuit have addressed that issue in the context of 42 U.S.C. § 2000e. Defendants further contend that a constructive discharge did not occur since plaintiff elected to resign

without coercion or undue pressure from City officials and without appealing the discipline imposed, and since plaintiff initiated the idea of resigning in lieu of taking a demotion.

As a threshold matter, the Court finds that plaintiff is not barred from alleging a constructive discharge in order to establish his claims under § 1983. Plaintiff is not bringing a constructive discharge claim *per se*, but is alleging a constructive discharge as a predicate to his § 1983 claims. The United States Court of Appeals for the Sixth Circuit has implicitly recognized that the issue of constructive discharge may arise outside the context of § 2000e. See *Kreis*, 833 F.2d 74 (law of constructive discharge applied in ERISA case to determine number of participants involuntarily excluded from ERISA plan).

▆ The Court agrees with plaintiff that a reasonable individual in his situation would have felt compelled to resign because working conditions would have been intolerable. Foremost among the factors leading to this conclusion is the obvious psychological impact of a demotion. A demotion would cause continuing difficulties for a reasonable employee in plaintiff's position. If demoted, plaintiff would have been placed in a situation where he would be required to take orders from individuals who were previously of equal rank to him. Plaintiff would also face the prospect of having to work alongside individuals he had supervised in the past. These circumstances would in all likelihood adversely impact plaintiff's ability to lead others and to command the respect of his superiors and subordinates.

Furthermore, although plaintiff was not overtly coerced into making a decision to resign rather than accept a demotion, the coercive impact of the circumstances leading to his resignation is apparent. Plaintiff was given two days to make a decision that would have lifelong impact, such as with regard to benefits and retirement pay. In addition, it was reasonable for plaintiff to believe he would experience hostile treatment if he continued in the City's employ. Adverse publicity had surrounded his de-

motion and the events leading to his demotion, and City officials felt that his actions had reflected unfavorably on the City in a sensitive area. An attitude that plaintiff was unsuited for the position of Assistant Fire Chief is reflected in the recommendation of discipline made by Rager. In that recommendation Rager states:

> I have concluded that you should be put back into a position that you do best; that is fire fighting. (Deposition of Robert Burnett, pg. 34)

Despite the fact that plaintiff's demotion was for a six-month period to be followed by a reevaluation, it was reasonable for plaintiff to conclude from Rager's statements that city officials had determined he was not suited for the position of Assistant Fire Chief and that his demotion would therefore be permanent.

In light of these factors, the Court finds that the first prong of its two-part inquiry is met. The Court further finds that defendants must be held to have foreseen that their actions would lead to plaintiff's resignation. Defendants were necessarily aware of the awkward and untenable position in which plaintiff would be placed if he accepted a demotion. An employer could reasonably foresee that plaintiff would feel compelled to resign in order to avoid working under such conditions. Because plaintiff's resignation was foreseeable, defendants must be held to have intended that plaintiff resign from the fire department in response to their actions. Therefore, a constructive discharge exists in this case.

## PROCEDURAL DUE PROCESS

Plaintiff claims that he was denied procedural due process because the hearing examiner refused to allow plaintiff's counsel to question Fire Chief Norman Wells, a witness called by the City, about the specific nature of the charges, the motivations for filing the charges, and the identity of the actual charging party; the hearing officer was biased and had prejudged plaintiff's guilt; plaintiff was deprived of his right to call witnesses because the hearing officer failed to disclose he was the true charging party; the City did not comply

with its own administrative procedures set forth in the *Hearing Officer Handbook*[1]; and plaintiff was denied a post-termination hearing. The individual defendants contend that they are entitled to qualified immunity on plaintiff's due process claim.

■ The individual defendants are entitled to qualified immunity unless plaintiff's asserted rights were so clearly established when the acts complained of occurred that a reasonable individual in defendant's position would have understood that he was required to refrain from such conduct. *Ramirez v. Webb*, 835 F.2d 1153, 1156 (6th Cir.1987). Plaintiff must assert a particular and clearly established violation of his constitutional rights to prevail against a claim of qualified immunity. *Garvie v. Jackson*, 845 F.2d 647, 649–50 (6th Cir. 1988).

The law governing plaintiff's due process claim was clearly established at the time the acts of which plaintiff complains occurred. Such law provides that if an individual has a property right in continued employment, the state may not deprive him of that property without due process of law. *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). The essential requirements of due process are notice and an opportunity to be heard. *Id.* at 546, 105 S.Ct. at 1495. Specifically, a tenured public employee is entitled to oral or written notice of the charges against him; an explanation of the employer's evidence; and an opportunity to present his side of the story. *Id.*

As a general rule, a pretermination hearing need not be a full evidentiary hearing. *Id.* at 545, 105 S.Ct. at 1495. The purpose of the hearing is to ascertain whether there are reasonable grounds to believe the charges against the employee are true and support the proposed action. *Id.* at 545–46, 105 S.Ct. at 1495.

■ Under Ohio law, a classified civil servant has a property right in continued employment. *Id.* at 538, 105 S.Ct. at 1491; *Seltzer v. Cuyahoga County Department of Human Services,* 38 Ohio App.3d 121, 528 N.E.2d 573 (1987). The position of assistant fire chief is a classified civil service position. Ohio Rev.Code Ann. § 124.11. Therefore, plaintiff had a property right in his job. His threatened demotion and consequent constructive discharge deprived plaintiff of such property right. Thus, plaintiff must have been accorded procedural due process in connection with that deprivation.

Plaintiff was given notice of the charges against him in January, 1988. (Affidavit of John Meyers). He was also notified of his right to call any witnesses on his behalf at the hearing on those charges. The hearing was conducted by Rager on February 12, 1988 (*Id.*) At the hearing, Chief Wells explained the facts leading to the charges against plaintiff and read the Prep employees' version of the incidents giving rise to such charges. Plaintiff's counsel was permitted to cross-examine Chief Wells. Plaintiff was also allowed to call witnesses. These procedures satisfied the *Loudermill* pretermination requirements of notice and an opportunity to respond.

However, plaintiff further alleges that he was denied procedural due process because the hearing officer was biased and had prejudged plaintiff's guilt. *Loudermill* does not require that a discharged municipal employee receive a pretermination hearing before a neutral and impartial decisionmaker. Rather, *Loudermill* contemplates a right of reply before the individual responsible for the employee's discharge. *Duchesne v. Williams,* 849 F.2d 1004, 1007–08 (6th Cir.1988), *cert. denied,* —— U.S. —— 109 S.Ct. 1535, 103 L.Ed.2d 840 (1989). Nonetheless, there may be

---

1. Plaintiff claims that the proceedings against him violated the City's own due process standards, which he alleges are higher than those imposed by *Loudermill.* Although the state is allowed to provide more elaborate protection of employees' rights than is provided by the United States Constitution or federal law, the Court need only determine as a matter of federal procedural due process whether the individual received constitutionally adequate process. *Cremeans v. City of Roseville,* 861 F.2d 878, 882 (6th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2065, 104 L.Ed.2d 630 (1989); *Hawks v. City of Pontiac,* 874 F.2d 347, 350 (6th Cir.1989).

cases in which the supervisor is so biased that the right of reply process is meaningless. *Id.* at 1008. The post-termination hearing is intended to ferret out any such bias and pretext in the employer who has discharged the employee. *Id.*

Plaintiff was entitled to present his claims of bias and pretext on the part of the hearing officer in a post-termination hearing before the Cincinnati Civil Service Commission. *Loudermill* requires that a pretermination opportunity to respond be coupled with administrative post-termination procedures as provided under state law. *Loudermill,* 470 U.S. at 548, 105 S.Ct. at 1496–97. Ohio Rev.Code Ann. § 124.34 provides that in the case of a demotion or removal of a member of a municipal fire department, the employee may take an appeal to the municipal civil service commission, which shall hear said appeal. In light of the Court's determination that plaintiff was constructively discharged from his job, he was entitled to a post-termination hearing.[2] It is undisputed that plaintiff did not receive a *de novo* hearing provided for under § 124.34 at which he had the opportunity to present evidence directed toward establishing that the charges against him were false and that the hearing officer was biased. Denial of same deprived plaintiff of his procedural due process rights. Defendants are not entitled to qualified immunity on plaintiff's claim that he was deprived of such rights since they were clearly established at the time of his demotion. Plaintiff's motion for summary judgment is well-taken as to this claim.

## FIRST AMENDMENT

■ A state may not discharge an employee on a ground that infringes the employee's constitutional rights to freedom of speech. *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). The interest of an employee as a citizen in speaking on matters of public concern must be balanced against the inter-

ests of the state as an employer in the efficiency of public services. *Id.* at 384, 107 S.Ct. at 2896–97 (*quoting Pickering v. Bd. of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). The Court should consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.* 483 U.S. at 388, 107 S.Ct. at 2899.

■ The threshold issue is whether the employee's speech addresses a matter of public concern. *Id.* at 384, 107 S.Ct. at 2896–97 (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). See also *Matulin v. Village of Lodi,* 862 F.2d 609, 612 (6th Cir.1988). In resolving this issue, the Court must look at the content, form and context of a given statement. *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91. An important factor is whether "the speech relates primarily to a matter of 'limited public interest' and does not 'seek to bring to light actual or potential wrongdoing or breach of public interest', centering instead on matters primarily ... 'of personal interest' to the employee ..." *Brown v. City of Trenton,* 867 F.2d 318, 322 (6th Cir.1989) (*quoting, Jurgenson v. Fairfax County,* 745 F.2d 868, 879 (4th Cir.1984). The inquiry into the protected status of speech is a matter of law. *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690.

■ Clearly, the City's affirmative action policy is a matter of public concern. However, the issue before the Court is not whether affirmative action may be the topic of a communication to the public that might be of general interest; the question is whether the particular statements by plaintiff are protected speech. See *Connick,* 461 U.S. at 148 n. 8, 103 S.Ct. at 1691 n. 8.

---

**2.** Because the nature of the charges apparently was made known to the public, plaintiff was also entitled to a hearing to attempt to clear his

name. *Burkhart v. Randles,* 764 F.2d 1196 (6th Cir.1985).

Assuming, *arguendo*, that plaintiff made the statements attributed to him, those statements and the context in which they were made lead to the conclusion that plaintiff was not, in this instance, speaking on a matter of public concern. Plaintiff's statements do not disclose any wrongdoing or breach of public trust. The statements plaintiff made simply convey one individual's personal viewpoint on affirmative action. *See Connick*, 461 U.S. at 148, 103 S.Ct. at 1690–91. Plaintiff's personal opinion on the merit of affirmative action is not a matter of interest to the community about which it is essential that he be able to speak freely without fear of discipline. Accordingly, plaintiff's demotion and consequent constructive discharge did not infringe his constitutional right of freedom of speech.

## RACE DISCRIMINATION

█ Plaintiff claims that his constructive discharge was motivated by purely racial considerations in violation of 42 U.S.C. §§ 1981 and 1983. Title 42 U.S.C. § 1981 provides, in pertinent part, that:

All persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens ...

The right to enforce contracts refers to the right of access to legal process that will resolve contract law claims without regard to race. *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 2373, 105 L.Ed.2d 132 (1989). This case does not involve such right.

Section 1981 prohibits an employer, at the time of a contract's formation, from intentionally refusing to enter into a contract with an employee on racially neutral terms. *Id.* 109 S.Ct. at 2372. The right to make contracts protected under § 1981 does not extend to conduct by the employer after the contract relation has been established, including breach of the terms of the contract by the employer or imposition of discriminatory working conditions. *Id.* at 2373.

Plaintiff's § 1981 claim involves conduct that occurred subsequent to his entering into an employment relation with the City.

Thus, plaintiff's discrimination claim is not actionable under § 1981.

In order to maintain a claim under § 1983 a plaintiff must demonstrate that the defendant has deprived him of a right secured by the Constitution and laws of the United States and that the deprivation occurred under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Bier v. Fleming*, 717 F.2d 308, 310 (6th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984).

Defendants do not dispute that they acted under color of state law. As to the second element of plaintiff's claim, if plaintiff was constructively discharged on the basis of his race, he was deprived of his right to equal protection of the law. *See Webb v. City of Chester, Ill.*, 813 F.2d 824, 829 (7th Cir.1987).

To prevail on his § 1983 claim, plaintiff must first prove that defendants purposefully discriminated against him on the basis of his race. *Lowe v. Monrovia*, 775 F.2d 998, 1010 (9th Cir.1985). Plaintiff can establish intent by proof of actions by the employer which, if unexplained, permit an inference that is more likely than not that such actions were based on illegal discriminatory criteria. *Lynch v. Freeman*, 817 F.2d 380 (6th Cir.1987).

As evidence of discrimination against him, plaintiff alleges that he was afforded disparate treatment when compared to other high-ranking members of the Police and Fire Divisions. Plaintiff alleges that Police Chief Lawrence Whalen was reprimanded for instances of misconduct equal to or of a more serious nature than plaintiff's alleged wrongdoing. Plaintiff claims that the only explanation for the more serious discipline of plaintiff is that race relations were involved in plaintiff's case.

Plaintiff is not claiming that he was treated differently than Chief Whalen because of his race. He is alleging that he was treated differently than Chief Whalen because of the nature of the incidents giving rise to the discipline imposed. Such

evidence does not support a claim of race discrimination under § 1983.

■ Plaintiff further points to a difference in the treatment he received as opposed to Fire Captain Robert Wright, who plaintiff alleges is black. Wright was one of the individuals who passed out Prep business cards during the fire recruit candidate sign-up. Plaintiff claims that Wright's act of passing out Prep cards to minority recruits and denying them to non-minority recruits who requested them exhibited poor judgment and violated a City ordinance prohibiting distribution of literature at City Hall. Yet, plaintiff alleges that while Captain Wright was not disciplined in any manner, plaintiff was demoted for a similar display of poor judgment.

The evidence offered by plaintiff does not satisfy his burden of demonstrating that he was purposefully demoted or discharged from his employment because of his race. Wright's act of passing out Prep cards to only those individuals the organization assists is not sufficiently similar to plaintiff's alleged conduct as to support a disparate treatment claim.

There is no other indication in the record that plaintiff was not in actuality demoted or discharged because of his role in the Prep incident, but was disciplined because he was white. The fact that plaintiff was disciplined for an incident involving race relations does not demonstrate an intent on defendants' part to discriminate against plaintiff on the basis of *his* race. Therefore, plaintiff's § 1983 claim must fail.

## CONSPIRACY CLAIM

■ To state a cause of action under § 1985(3):

a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It

must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

Plaintiff claims that the facts "clearly demonstrate a conspiracy between David Rager, Lucy Green and perhaps others." In his motion for summary judgment and reply to defendant's response, plaintiff does not allege any facts to support a finding that defendants and representatives of Prep, Inc. conspired together in any manner or that they conspired with an intent to deprive plaintiff of his job and other constitutional rights. The fact that representatives of Prep, Inc. complained to the City about plaintiff's actions and City officials credited their version of events does not constitute evidence of a conspiracy. Absent any supporting factual allegations, defendants are entitled to summary judgment on plaintiff's conspiracy claim.[3]

## TORT CLAIMS

■ Plaintiff claims that he has not moved for summary judgment on his tort claims as there is further discovery to be conducted. Plaintiff alleges that defendants have failed to cite any evidence in the record that would support their motion for summary judgment on these claims.

The Court notes that the discovery cutoff date was May 1, 1989. Plaintiff filed his motion for summary judgment and response to defendants' motion for summary judgment on September 25, 1989, approximately five months after the discovery deadline had passed. Thus, summary judgment is not precluded on the ground that plaintiff has not completed discovery.

Under Ohio law, an individual is subject to liability for the intentional infliction of emotional distress where he "... by ex-

**3.** The Court finds it unnecessary to address whether plaintiff is included among a class of individuals who may pursue a claim under § 1985(3).

treme and outrageous conduct intentionally or recklessly causes severe emotional distress to another ..." *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983). Conduct is "extreme and outrageous" where it goes beyond "all possible bounds of decency" and is "to be regarded as atrocious, and utterly intolerable in a civilized community." *Reamsnyder v. Jaskolski,* 10 Ohio St. 3d 150, 153, 462 N.E.2d 392 (1984).

Although there is room for disagreement as to what, if any, discipline was appropriate for plaintiff's alleged misconduct, that question is not before the Court. As a matter of law, accepting all of plaintiff's allegations as true, defendants' actions cannot be found to rise to the level of extreme and outrageous conduct required under Ohio law. Defendants are entitled to summary judgment on this claim.

## LIBEL

 Plaintiff alleges that defendants committed libel by maliciously causing charges to be served on plaintiff alleging that he had engaged in acts intended to frustrate the affirmative action efforts of Prep, Inc. when they knew or should have known such statements to be false. Libel is "a false and malicious publication made with the intent to injure a person's reputation or expose him to public hatred, contempt, ridicule, shame or disgrace, or to affect him adversely in his trade or profession." *Thomas H. Maloney & Sons, Inc. v. E.W. Scripps Co.,* 43 Ohio App.2d 105, 107, 334 N.E.2d 494, 497 (1974), *cert. denied,* 423 U.S. 883, 96 S.Ct. 151, 46 L.Ed.2d 111 (1975). The essential elements of a libel claim are (1) falsity, (2) defamation, (3) publication, (4) injury, and (5) fault. *Nat'l Medic. Servs. Corp. v. E.W. Scripps Co.,* 1989 WL 35907, 1989 Ohio App. LEXIS 1267 (*citing Phil. Newspaper, Inc. v. Hepps,* 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). In an action for libel or slander, proof of the truth of the matter charged as defamatory is a complete defense. Ohio Rev.Code Ann. § 2739.02.

City officials were not obligated to establish the truth of the charges against plaintiff before serving those charges on him. Rather, the purpose of the pretermination hearing was to ascertain whether there were reasonable grounds to believe the charges against plaintiff were true. There is absolutely no evidence in the record which suggests that Rager possessed some outside information at the time of the filing of the charges from which he knew or should have known that they were, in actuality, false. Thus, the serving of the charges upon plaintiff cannot support a libel claim.

## SLANDER

Plaintiff alleges in the complaint that defendant Rager engaged in slander by making statements to the news media during the months of December 1987 and/or January 1988 to the effect that plaintiff had discouraged Prep from engaging in affirmative action programs on behalf of minority individuals when he knew such statements were false. The elements of slander are identical to those of libel except that slander involves an oral statement rather than a written publication. *Sexton v. Cleveland Athletic Club,* No. 38990, Ohio App. (July 12, 1979) (unpublished opinion) (*citing Fawcett v. G.C. Murphy & Co.,* 46 Ohio St. 2d 245, 348 N.E.2d 144 (1976)).

The record includes one newspaper article containing statements attributed to defendant Rager. In the article, Rager was said to have stated that complaints had been received that two top-ranking fire officials had tried to stop a local firm from signing up potential recruits for its study program; that plaintiff and another individual were the focus of the investigation; that Rager had told the Fire Chief to have the matter investigated; and that appropriate disciplinary action would be given. Rager was quoted as stating, "I'm pretty hot about it. If it happened, it should not have happened." Contrary to plaintiff's allegations, Rager did not state to the media that plaintiff had committed any wrongdoing or even that he believed plaintiff had engaged in any wrongdoing. Rather, he disclosed that complaints to that effect had been received and would be investigated.

The undisputed facts demonstrate that this is precisely what occurred. Because Rager's statements to the media were not false, defendants are entitled to summary judgment on plaintiff's slander claim.

## CONCLUSION

■ The Court expresses no opinion as to whether or not plaintiff should be disciplined. The Court further expresses no opinion as to the nature of such discipline. The Court does hold that plaintiff was denied procedural due process and is therefore entitled to be reinstated to his former position with back pay and all other benefits, less past benefits received in the interim from any pension he may have, until such time as plaintiff is afforded a post-termination hearing.

The Court's disposition of the procedural due process issue is a final and appealable order. It would serve no purpose, however, to leave unresolved other issues that might be the subject of a subsequent appeal. The Court has ruled on those issues with the expectation that if this matter is appealed to the United States Court of Appeals for the Sixth Circuit, those other issues can be considered and this litigation proceed in the most expeditious fashion.

## CONCLUSIONS OF LAW

(1) Plaintiff was constructively discharged from his position as Assistant Fire Chief with the City of Cincinnati under the standard set forth in *Yates v. Avco Corp.,* 819 F.2d 630, 636–37 (6th Cir. 1987).

(2) Plaintiff had a property right in continued employment with the City. *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Seltzer v. Cuyahoga County Dept. of Human Services,* 38 Ohio App.3d 121, 528 N.E.2d 573 (1987). He was entitled to procedural due process in connection with the deprivation of that right. *Id.*

(3) Plaintiff was denied procedural due process as a result of the Cincinnati Civil Service Commission's failure to provide him with a post-termination hearing on the merits of his appeal to the Commission. *Cleveland Bd of Education v. Loudermill,* 470 U.S. 532, 548, 105 S.Ct. 1487, 1496–97, 84 L.Ed.2d 494 (1985).

(4) Defendants are not entitled to qualified immunity on plaintiff's procedural due process claim.

(5) Plaintiff is entitled to be reinstated to his former position with back pay and all other benefits, less benefits received in the interim from any pension he may have, until such time as plaintiff is afforded a post-termination hearing.

(6) Plaintiff's alleged comments to representatives of Prep, Inc. did not address a matter of public concern; therefore, plaintiff's demotion and consequent constructive discharge did not infringe his constitutional right to freedom of speech. *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

(7) Plaintiff's race discrimination claim is not actionable under 42 U.S.C. § 1981 since it involves conduct that occurred subsequent to his entering into an employment relation with the City. *Patterson v. McLean Credit Union,* — U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

(8) The undisputed facts do not support a race discrimination claim under 42 U.S.C. § 1983.

(9) Plaintiff has failed to allege specific facts which, if accepted as true, would demonstrate the existence of a conspiracy under 42 U.S.C. § 1985(3).

(10) Defendants' conduct cannot be found to rise to the level of extreme and outrageous conduct which is necessary to support a claim for intentional infliction of emotional distress under Ohio Law. *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983).

(11) Defendants' act of serving charges on plaintiff does not support a claim for libel. *Nat'l Medic Servs. Corp. v. E.W. Scripps Co.,* 1989 WL 35907, 1989 Ohio App. LEXIS 1267.

(12) Defendant Rager's statements to the media concerning the Prep investigation were not slanderous. *Sexton v. Cleveland Athletic Club,* No. 38990, Ohio App. (July 12, 1989) (unpublished opinion).

Summary judgment is GRANTED in part in favor of the plaintiff and in part in favor of defendants in accordance with the foregoing.

IT IS SO ORDERED.