DePALMA, Appellant,

v.

CITY OF LIMA et al., Appellees.

[Cite as *DePalma v. Lima,* 155 Ohio App.3d 81, 2003-Ohio-5451.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–03–10.

Decided Oct. 14, 2003.

David S. Kessler, for appellant.

Anthony L. Geiger, City Law Director, for appellee.

THOMAS F. BRYANT, Presiding Judge.

{¶ 1} Appellant, Anthony DePalma, brings this appeal from the judgment of the Court of Common Pleas of Allen County reversing the judgment of the city of Lima Civil Service Board and terminating the employment of DePalma.

{¶ 2} For more than two decades, DePalma was employed by the Lima Fire Department. During his career, DePalma received very high scores on his exams and received numerous awards for valor and dutiful service. In 2000, DePalma was promoted to assistant chief. In December of 2000, DePalma developed kidney stones and was prescribed various narcotic pain medications. DePalma became addicted to these medications. When the medications were no longer available from his treating physicians, DePalma began to purchase them illegally and eventually began taking heroin. Realizing he had a drug addiction, DePalma spoke with his pastor and fellow firefighter Rick Robinson, who is in recovery from an addiction to crack cocaine. DePalma voluntarily checked himself into Shepherd Hill, a nationally known addiction-treatment center at the beginning of October, 2001. On October 5, 2001, DePalma was visited by the fire chief, who informed DePalma that he had to sign a last-chance agreement ("LCA") or his employment would be terminated. The agreement required DePalma to (1) complete treatment at Shepherd Hill, (2) abide by all recommendations or he would be terminated, (3) submit to quarterly performance appraisals, and (4) submit to random drug and alcohol testing. The purpose of the LCA, according to the testimony, was to treat DePalma like Robinson. The first indication the department had of DePalma's drug addiction was his seeking treatment. No incidents had previously occurred to indicate DePalma's drug use.

{¶ 3} On March 17, 2002, DePalma was taken to the hospital to be treated for a kidney stone. At the hospital, DePalma was given a full 30–day prescription for Vicodin. When the pain progressed, DePalma returned to the hospital and was scheduled for surgery. DePalma was given Demerol while awaiting surgery. The hospital was aware that DePalma was an addict, but no follow-up was arranged to prevent further addiction to the pain killers, which DePalma received for approximately two weeks. DePalma was off work until March 30, 2002, because of treatment for the kidney stones.

{¶ 4} On April 1, 2002, DePalma returned to work and was required to submit to a drug test. The test revealed the presence of pain killers in DePalma's system, and his employment was terminated pursuant to the LCA. DePalma appealed the termination to the board. The board found that the termination had not been appropriate and reversed the termination. Specifically, the board found as follows.

"DePalma's termination was based upon his admitted violation of the terms and conditions of the [LCA] he entered into with the City on October 5, 2001.

"At the time DePalma was presented with the [LCA] by Chief Ted Brookman and Kevin Rader of the Lima Fire Department, DePalma was hospitalized at Shepherd Hill treatment center after admitting himself for drug rehabilitation.

"DePalma had not been subject to disciplinary proceedings immediately prior to admitting himself to Shepherd Hill.

"The [LCA] constitutes a disciplinary proceeding in that it changed the terms and conditions of DePalma's employment with the Lima Fire Department.

"DePalma was not afforded prior written notice of the intent to institute disciplinary proceedings by presentation of the [LCA] and that he was not afforded the right to representation at said meeting.

"All persons aware of the presentation of the [LCA] to DePalma believed that DePalma was being treated in a manner consistent with past disciplinary practices of the City.

"DePalma was denied his right to due process as required by the Supreme Court of Ohio in *Kennedy v. Marion Correctional Institution* (1994), 69 Ohio St.3d 20 [630 N.E.2d 324], and *Meyers v. City of Cincinnati* (S.D.Ohio 1990), 728 F.Supp. 477.

"DePalma received disparate treatment from other similarly situated employees of the City and that the work rules and administrative policies were selectively applied to him.

"The City did not provide DePalma with notice that the work rules and administrative policies in prior discipline proceedings concerning other City employees.

"The termination of DePalma's employment with the Lima Fire Department was not appropriate under the circumstances."

 {¶ 5} The board then reinstated DePalma and suspended him without pay for 14 days.[1] On July 26, 2002, the city of Lima appealed the board's decision to the Court of Common Pleas of Allen County on questions of law and fact. On January 17, 2003, the trial court, after reviewing the record of the board's proceedings, reversed the decision of the board and affirmed the termination.[2] The trial court made the following findings.

"At the time Mr. DePalma was presented with the [LCA] at Shephard [sic] Hill, in light of the content of the [LCA] and the fact that he had admitted himself to Shephard [sic] Hill for treatment for drug addiction, it would have been obvious to him what the allegations were against him. Thus, the notice requirement was fulfilled.

"The very fact that Mr. DePalma was at Shephard [sic] Hill for treatment for drug addiction was a substantial portion of the City's evidence which surely would have needed no further explanation."

{¶ 6} Based upon this, the trial court found that DePalma was granted minimal due process. It is from this judgment that DePalma appeals and raises the following assignments of error.

"The [trial] court erred by relying upon the mere fact that [DePalma] voluntarily sought treatment for addiction as sufficient cause for discipline.

"The [trial] court erred when it determined that [DePalma] had not been treated differently from other City employees.

"The [trial] court erred when it concluded that the City had just cause to discipline [DePalma].

"The [trial] court erred when it failed to recognize that the City had an affirmative obligation to provide [DePalma] with a 'right of reply' hearing before forcing him to work pursuant to a last chance agreement."

{¶ 7} In the first assignment of error, DePalma claims that the city should not have been permitted to use the act of his voluntarily seeking treatment as the basis for changing the terms of his employment. An employer is prohibited from changing the terms of employment for a person with a disability just because of

---

1. This penalty was identical to the penalty given to Robinson upon his second relapse.

2. Neither side requested to supplement the record with additional evidence.

that disability. Section 12112(a), Title 42, U.S.Code. A qualified individual with a disability does not include an employee currently engaging in the illegal use of drugs. Section 12114(a), Title 42, U.S.Code. However, an individual is considered to be a qualified individual with a disability if he or she "is participating in a supervised rehabilitation program and is no longer engaging in such use." Section 12114(b)(2), Title 42, U.S.Code. The purpose behind these statutes is to encourage drug addicts to seek treatment without worrying that doing so will cost them their jobs.

{¶ 8} In this case, the mayor and the fire chief both testified that prior to DePalma's entering the treatment program at Shepherd Hill, there was nothing to indicate that DePalma had violated any rules of work. His performance and behavior at work were excellent. However, once DePalma voluntarily entered the treatment program, the city became aware of his drug addiction and immediately changed the terms of DePalma's employment by having him sign the LCA. The city argues that this was a permissible action because the LCA was not discipline. The city claims that the LCA is not discipline because it did not adversely affect DePalma at the time he signed it. However, a written reprimand is discipline if it is placed in an employee's file and the implications of the writing continue beyond the placement in the file. See *Jones v. Franklin Cty. Sheriff* (1990), 52 Ohio St.3d 40, 555 N.E.2d 940. This court does not see any difference between the LCA and a written warning that is placed in one's file. Neither action adversely affects the subject at the time made. However, both actions can provide the basis for further action at a later time, including termination. Thus, the LCA is a form of discipline.

{¶ 9} The LCA was signed while DePalma was actively seeking treatment at a rehabilitation center and was no longer using the substance to which he is addicted.[3] Thus, DePalma was a disabled individual under federal law when he was presented with the LCA. DePalma had been at Shepherd Hill for approximately one week when the fire chief, the union representative, and a substance-abuse counselor arrived and told DePalma to either sign the document or be terminated. This, in effect, was a disciplinary action for being a drug addict. The mayor testified at the hearing that he viewed the status of being an addict the same as actively using drugs and therefore, he believed, equally subject to discipline. However, the city had no valid grounds for disciplining DePalma at this time as there was no violation of any workplace rule.[4] The city had no

---

3. The doctor from Shepherd Hill testified that drug tests were given daily for the entire treatment period, including upon returning from day or weekend leaves. The doctor testified that DePalma tested negative for drugs on every drug screen performed by Shepherd Hill.

4. Specifically, the workplace regulations concerning drugs and alcohol prohibit the use of alcohol or hallucinogenic drugs at work and prohibit an employee from working while under

authority to require the LCA at that time, as changing DePalma's terms of employment and disciplining him for being a drug addict violate federal law.[5] Since the LCA could not be legally imposed while DePalma was in treatment at Shepherd Hill and no longer using drugs, the LCA is not valid, and the violation of its terms alone cannot form just cause for DePalma's termination. The first assignment of error is sustained.

{¶ 10} The fourth assignment of error claims that the city should have granted DePalma a right to respond prior to requiring him to sign the LCA. According to the testimony of the fire chief and the mayor, any employee being disciplined has the right to respond to allegations prior to the imposition of any discipline. This would include any written warnings to be placed in an employee's file. Because the city did not view the LCA to be discipline, DePalma was not given any opportunity to respond to the LCA prior to being required to sign it.

"The essential requirements of due process * * * are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. * * * The tenured public employee is entitled to oral or written notice of the charges against him, and explanation of the employer's evidence, and an opportunity to present his side of the story." *Kennedy v. Marion Correctional Inst.* (1994), 69 Ohio St.3d 20, 23, 630 N.E.2d 324, citing *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494.

{¶ 11} However, as discussed above, the LCA is a form of discipline. DePalma was entitled to all due process that is available for any form of discipline, including a right to respond. DePalma was not given any notice of the disciplinary action prior to the implementation of the action and was given no opportunity to respond.[6] Thus, the fourth assignment of error is sustained.

{¶ 12} In the third assignment of error, DePalma claims that the city did not treat him like other employees with similar problems. In the board's opinion,

---

the influence of alcohol or drugs. The record contains no written policy respecting the use of an LCA.

5. Under federal law, an employer cannot discipline or change the terms of employment of a drug addict as long as he or she is seeking treatment and refraining from usage. The employee can be disciplined for the effects his or her usage has on his or her occupation, e.g., lateness, absences, theft, the same as any other employee. However, the statute draws a distinction between one's status as an addict and one's behavior as a user.

6. If DePalma had been permitted to respond, the LCA might never have been signed since the city admits that the sole basis for the LCA was the voluntary admission of DePalma into Shepherd Hill.

it specifically found as fact that DePalma was treated differently from similarly situated employees and used this finding as one of the reasons for reversing his termination and for imposing a 14–day suspension. The city argues that disparate treatment is permissible because the employees are not similarly situated. Individuals who have basically the same job functions are similarly situated even if their job titles are different. *Blansett v. Grafton Correctional Inst.* (Apr. 5, 2000), Lorain App. No. 99CA007344, 2000 WL 354197; Ohio Adm.Code 124:9–11.

{¶ 13} At the hearing before the board, extensive testimony was given on the circumstances of Robinson's punishment for a drug-related work-rule violation. In 1993, it became known to the fire chief that Robinson had a crack-cocaine addiction. Robinson entered the rehabilitation program at Shepherd Hill but left after two weeks. Later in the year, friends of Robinson noticed that he was still using drugs and that such use was affecting his work. Upon that discovery, the fire chief, Robinson's friends, the union representative, representatives of the city, and drug-treatment specialists from Toledo Hospital staged an intervention to confront Robinson about his drug problem. The city helped plan the intervention. At the end of the intervention, Robinson went to Toledo Hospital for drug treatment. In 1994, Robinson again relapsed and was checked into Shepherd Hill with full knowledge of the city. Upon Robinson's release from Shepherd Hill and after two relapses, the city presented Robinson with an LCA. At the time of the intervention, Robinson was a captain in the fire department and was responsible for the lives of other firefighters at a fire.[7] Robinson is currently still employed as an assistant fire chief, the same rank as DePalma.

{¶ 14} In this case, everyone involved with presenting the LCA to DePalma at Shepherd Hill testified that their intent was to treat DePalma like Robinson. However, the treatment was in fact not the same. DePalma's admission to Shepherd Hill was his first attempt at receiving treatment and was done of his own volition. He was given the LCA by the city immediately. Robinson was not given the LCA until after two relapses and the completion of two treatment programs. The fire chief testified that he had told DePalma that the city was treating DePalma the same as Robinson and that he believed that the treatment was the same. The fire chief also testified that he found out later that the treatment was not the same and that he would not have presented the LCA to DePalma if he had known the treatment was not the same. This testimony was verified by the union representative who went to Shepherd Hill with the fire chief to present the LCA to DePalma.

{¶ 15} In contrast, the city argues that it does not have to treat the employees the same. The basis of this argument is that the employees compared here held

---

7. DePalma was also a captain at that time.

different ranks. Basically, the city is arguing that if a captain, such as Robinson, develops a drug addiction, this is less of an offense than if an assistant fire chief, such as DePalma, develops a drug addiction. This argument is illogical. DePalma's rank did not aid him in the offense, so it may not be a basis for disparate treatment. Both positions were supervisory positions with responsibility for the safety of other firefighters as well as of the public. The assertion that DePalma has more responsibility is irrelevant because there is no evidence that his addiction affected his job. To the contrary, all of the testimony, including that presented by the city, is that no one saw any effect on DePalma's job due to his drug use.

{¶ 16} The city also argues that it does not have to treat DePalma like Robinson because the LCA was the only discipline that worked with Robinson, so it should not duplicate with DePalma the additional preliminary attempts that failed with Robinson. However, there is no evidence that the LCA is what influenced Robinson. The evidence is that Robinson was able to become drug free only after completing two residential rehabilitation programs and suffering two relapses. That the LCA was presented to Robinson after the final rehabilitation program does not prove that the LCA was the impetus for Robinson's recovery. At best, it is a coincidence. The testimony of the doctor at the board hearing confirmed that many patients suffer relapses before they are able to forego drug use. Thus, this argument also fails.

{¶ 17} Finally, the city claims that it could present the LCA agreement to DePalma because it could have terminated DePalma for using drugs when it learned that he was in treatment at Shepherd Hill. However, the city could not legally terminate DePalma for seeking treatment for a drug addiction without violating federal law. The testimony of all the witnesses was that the sole reason for the LCA was DePalma's admission to Shepherd Hill. As noted above, this lone fact is not just cause for termination from employment, for the city had no right to terminate DePalma solely for his status as a drug addict. Further, the city's disciplinary policy does not provide for termination of employment for drug use outside of the work place. The policy prohibits only the use of hallucinogenic drugs and alcohol at the work place. Thus, the drug policy itself does not provide a basis for termination. The second assignment of error is sustained.

{¶ 18} In the final assignment of error, DePalma claims that the trial court erred by finding that the city had cause to discipline DePalma for drug use. The city's disciplinary regulations state:

"[An employee] may be removed, suspended, laid off or reduced in grade by the appointing authority, for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of the provisions of this act or the rules of the Board,

or any other failure of good behavior or any other acts of misfeasance or nonfeasance in office.

"Examples of intolerable offenses are, BUT NOT LIMITED to the following:

"*1st OFFENSES—DISCHARGE*

"* * *

"2. Possession or consumption of intoxicating liquor or hallucinating drugs at work.

"3. Intoxication at work."

{¶ 19} The city also has a drug-free-workplace policy that prohibits the possession or use of drugs in the workplace.[8]

{¶ 20} The only evidence before the trial court was the testimony and exhibits presented at the board hearing. The trial court was acting in the capacity of an appellate court in this matter. Although the trial court can make its own findings of fact, as a reviewing court, it must give due deference to the factual findings of the board. *Chirila v. Ohio State Chiropractic Bd.* (2001), 145 Ohio App.3d 589, 763 N.E.2d 1192.

"The fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder." *State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.

{¶ 21} At the board hearing, the mayor testified that he and other city officials, who were never identified, had had discussions after learning about DePalma's rehabilitation treatment in which they concluded that DePalma must have been using drugs while at work. This testimony merely repeats gossip by unidentified parties and is not evidence to be considered probative by a court of law. There was no evidence that DePalma had ever used illegal drugs while at work or was under the influence of illegal drugs while at work. DePalma testified, without contradiction, that he had never used drugs while at work and had never come to work while under the influence. The testimony of all the witnesses was that DePalma's work continued to be excellent. Absent the positive drug test, which was given pursuant to the invalid LCA, there would have been no basis for discipline and no reason to suspect DePalma of any wrongdoing. The drug

---

8. It is interesting that the city's policies only specifically exclude the use of hallucinogenic drugs at work.

screen itself did not indicate that DePalma was under the influence of the drugs at the time of the screen, only that he had trace amounts of the substances in his system. This alone is insufficient to prove that DePalma was under the influence of the drugs at the time he reported to work. The city's regulations prohibit using drugs while at work or reporting to work while under the influence. Thus, the city presented no evidence to support its assumption that DePalma engaged in any activity prohibited by the city's employment policies.

{¶ 22} Although there is no doubt that DePalma's use of drugs was wrong and not to be imitated, there is no evidence that DePalma was a recreational user of drugs. The evidence indicates that the drug usage was the result of circumstances in consequence of treatment for a valid medical condition and not the product of a lack of moral character. Without any valid evidence to support the basis for the termination of DePalma, the city lacked just cause to do so. The third assignment of error is sustained.

{¶ 23} The judgment of the Court of Common Pleas of Allen County is reversed, and the cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

FAIN, J., concurs.

WALTERS, J., dissents.

MIKE FAIN, J., of the Second Appellate District, sitting by assignment.

WALTERS, Judge, dissenting.

{¶ 24} Because the city had valid reasons for terminating DePalma's employment, independent of the LCA, I must respectfully dissent from the majority herein.

{¶ 25} In an administrative appeal, an appellate court reviews the findings of the trial court under an abuse of discretion standard.[9] We may not find an abuse of discretion unless the trial court's decision was unreasonable, arbitrary, or unconscionable.[10]

{¶ 26} The majority herein bases its decision solely upon its reasoning that the LCA was invalid, and therefore, any termination based upon the LCA must also be invalid. However, the majority fails to address the trial court's determination

---

9. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264.

10. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

that the violation of the LCA was merely one of several independent and valid grounds upon which to base DePalma's termination.

{¶ 27} The majority finds that because there was no proof that DePalma had ever abused drugs while on duty, he could not have been fired for testing positive for cocaine and heroin. It quotes the language of the city's disciplinary regulations for the proposition that DePalma could be terminated only for "on duty" drug use. However, even the specific language quoted by the majority states that the list of "intolerable offenses" for which termination is proper is merely illustrative, not exhaustive.

{¶ 28} The trial court appropriately found that besides being terminated for violating the LCA, DePalma's termination was also based upon malfeasance, nonfeasance, and a failure of good behavior. The trial court correctly found that all three of these are proper grounds for removal under the Ohio Revised Code.[11] The trial court then determined that DePalma's actions constituted both malfeasance and a failure of good behavior. Contrary to the assertion of the majority, DePalma tested positive on April 1, 2002, for both cocaine and heroin, and further admitted to using these illegal drugs, not mere painkillers, repeatedly during the time period in question. In my belief, it is not unreasonable, nor arbitrary, nor unconscionable to find that an assistant fire chief who reports to work with both cocaine and heroin, two different highly potent illegal narcotics, in his system is guilty of both malfeasance and a failure of good behavior.

{¶ 29} Furthermore, the trial court found that neither the malfeasance nor the failure of good behavior was dependent upon the LCA violation. DePalma would have been subject to random drug testing even if there had never been an LCA, and Chief Brookman testified that he and several other firefighters had observed changes in DePalma's behavior that made them suspicious that DePalma was using drugs again. DePalma's termination, based upon failing the drug test, was founded upon his actions as a drug user, not, as the majority incorrectly asserts, upon his status as a drug addict.

{¶ 30} Even if the LCA is invalid, as the majority finds, the city properly terminated an assistant fire chief for malfeasance and a failure of good behavior upon testing positive for both cocaine and heroin. The trial court's finding that the city had other independent and adequate grounds to terminate DePalma was not unreasonable, arbitrary, or unconscionable. Accordingly, I would affirm the decision of the trial court.

---

11. R.C. 124.34.